## GROSS v. STATE OF INDIANA.

[No. 23,208. Filed November 1, 1917.]

1. CRIMINAL LAW.—*Appeal.—Review.—Conflicting Evidence.*— The court on appeal will not determine the weight of conflicting evidence. p. 585.

2. JUSTICES OF THE PEACE.—*Powers.—Arrests.*—Under §15, Art. 7, of the Constitution justices of the peace are conservators of the peace, and are authorized by statute (§2013 Burns 1914, Acts 1905 p. 584, 616) to arrest and detain any person found violating the law until a legal warrant can be obtained. p. 585.

3. ARREST.—*Arrest without Warrant.—Escape.—Recapture.*— Where one arrested for an offense committed in the presence of the arresting officer escaped, the officer was authorized, in view of §§2000, 2001 Burns 1914, Acts 1905 p. 584, 613, relating to arrest, escape and recapture, to pursue defendant and retake him without first having procured a warrant for the arrest. p. 585.

4. ARREST.—*On Criminal Charges.—Person Liable.*—As a general rule every citizen must submit to lawful arrest unless priv-

ileged therefrom by §6, Art. 1, of the Constitution of the United States, and §8, Art. 4, and §12, Art. 2, of the Constitution of Indiana, and justices of the peace are not exempted thereby. p. 585.

5. JUSTICES OF THE PEACE.—*Arrest on Criminal Charges.*—Although justices of the peace are, under §3302 Burns 1914, §2658 R. S. 1881, privileged from arrest on civil process while engaged in hearing or determining a trial, in case of arrest on a criminal charge they are in the same position as any other citizen. p. 586.

6. ASSAULT AND BATTERY.—*Commission in Making an Arrest.*—If a justice of the peace in making an arrest was unlawfully attempting to commit a violent injury upon the prisoner, or was using more force than was reasonably necessary, he thereby became an offender, subject to arrest, and his resistance by drawing a pistol was unlawful. p. 586.

7. CRIMINAL LAW.—*Drawing Dangerous Weapon.*—*Instruction.*—*Omission of Proviso in Statute.*—In a prosecution for drawing a dangerous weapon in violation of §2344 Burns 1914, Acts 1905 p. 584, 687, an instruction defining the offense, being complete as to the subject covered, was not erroneous for failure to include the exception noted in the proviso of the statute, as it was a matter of defense which need not have been negatived. p. 586.

8. CRIMINAL LAW.—*Instructions.*—*Request for.*—*Necessity.*—Instructions upon the subject of privilege from arrest are not erroneous because not making any exception to the right of one to resist an unlawful arrest, as such matter should have been presented by tendered instructions. p. 587.

9. CRIMINAL LAW.—*Instructions.*—*Standing of Accused in Community.*—In a prosecution for drawing a dangerous weapon in violation of §2344 Burns 1914, Acts 1905 p. 584, 587, an instruction that the jury should, in fixing the penalty, consider the "standing of the man in the community" was erroneous, as such matter could not be considered for the purpose of enhancing or diminishing punishment, especially where there was no evidence on the subject to guide the jury. pp. 587, 588.

10. CRIMINAL LAW.—*Instructions.*—*Applicability to Evidence.*—Instructions must be within the issues and pertinent to the evidence. p. 588.

11. CRIMINAL LAW.—*Fixing Punishment.*—*Erroneous Instructions.*—*Reversible Error.*—An instruction in a criminal prosecution, directing the jury to consider matters which were without the evidence and improper in fixing the punishment, cannot be said to be harmless where the penalty assessed was much greater than the minimum for the offense charged. p. 589.

From Lake Circuit Court; *W C. McMahan,* Judge.

Prosecution by the State of Indiana against Edward A. Gross. From a judgment of conviction, the defendant appeals. *Reversed.*

*McMahon & Conroy* and *Bruce & Youkey,* for appellant.

*Ele Stansbury,* Attorney-General, *U. S. Lesh, Elmer E. Hastings, Edward M. White* and *John G. McCord,* for the State.

MYERS, J.—Appellant was prosecuted upon an affidavit, for a misdemeanor—drawing a dangerous weapon on one James Orr. This appeal is from a judgment on a verdict of conviction by a jury. A motion for a new trial was overruled, and this ruling is the only error assigned. In support of this motion it is urged that the verdict is not sustained by the evidence, is contrary to law, and that the trial court erred in giving to the jury instructions Nos. 3, 4, 5, 7, 8 and 11 and in refusing to give instruction No. 1 tendered by appellant.

On December 3, 1915, appellant was a justice of the peace and had his office or courtroom on the second floor of a building in the city of Gary, and was also proprietor of a wholesale liquor store located on the first floor of the same building. On the above date one Vincent Marovich was a defendant in an attachment and garnishment proceeding in appellant's court. On the evening of that day, and while appellant was in his wholesale place of business, Marovich entered and sought to have him release the money covered by the garnishee proceedings. A controversy arose between them and possibly some blows were struck. Appellant attempted to arrest Marovich, who then ran out of the room onto the street and appellant followed him with a quart bottle in his hand, apparently intending to strike

Marovich. The threatened use of the bottle was within the presence and sight of J. H. Carlson, a plain clothes member of the Gary police force, who took hold of and stopped appellant and caused him to drop the bottle. They knew each other and the official position each held. There is evidence tending to show that Carlson at that time arrested appellant and also evidence to support a finding that no such arrest was made. It is conceded that no further attempt was made to arrest or take appellant into custody until probably twenty minutes after the occurrence on the street, and not until appellant had gone to his office and become engaged in a matter connected with his official duty. While he was thus engaged, Carlson and a Gary policeman entered appellant's office and without a warrant announced their purpose of taking him to the police station. Appellant demanded to see their authority for so doing, and declined to go with them unless they had a warrant for his arrest. A few minutes later other Gary policemen came, and then appellant took from his desk drawer a revolver, stepped back to the wall of the room, and ordered the policemen to depart therefrom, further saying that if they undertook to take him by force or to come nearer than a certain distance from him they would do so at their peril. During this parley between appellant and policemen, pistols were exhibited and threatened to be used on both sides. Finally the matter was compromised by the removal of the patrol wagon, which was standing in the street in front of the stairway leading to appellant's office, and the departure of all of the policemen except the captain, whom appellant accompanied to the police station.

Neither of the first two specifications of the motion can be sustained, for the reason that to do so would

require us to determine the weight of conflicting evidence, involving the question of whether or not Carlson legally arrested appellant while on the street and, if so, Did he voluntarily release him from custody? Appellant insists that he was acting as a peace officer when Carlson interfered to the advantage of an offender who thereby escaped. True, justices of the peace in this State are conservators of the peace (§15, Art. 7, Constitution), and by statute they are authorized to arrest and detain any person found violating any law of this State until a legal warrant can be obtained. §2013 Burns 1914, Acts 1905 p. 584, 616. But from the record before us it can hardly be said that Carlson had the purpose accredited to him by appellant. Carlson was a peace officer, and the demonstration of appellant in his attempt to arrest Marovich was in the presence and sight of Carlson, who assumed to and did act to prevent the overtaking of the third party. The propriety of the interfering officer's action, under all the circumstances in this case was a question for the jury. The jury must have found, and there is evidence to the effect that Carlson did arrest appellant while on the street, and that appellant, either by force or in some other manner, freed himself from custody. If the jury so found, then, as a matter of law, Carlson was authorized to pursue appellant and retake him into custody without having first procured a warrant for his arrest. §§2000, 2001 Burns 1914, Acts 1905 p. 584, 613. *Cooper* v. *Adams* (1830), 2 Blackf. 294; 1 Bishop, Crim. Proc. (2d ed.) §163.

The general rule requires every citizen of this State to submit to a lawful arrest. The exceptions to this rule are stated in the Constitution of the United States, §6, Art. 1, and the Constitution of this State, §8, Art. 4, and §12, Art. 2, but justices of

the peace are not exempted by either of these
5. provisions. However, by statute justices of the
peace are privileged from arrest on civil process
while engaged in hearing or determining a trial.
§3302 Burns 1914, §2658 R. S. 1881.

In this case, the arrest, if any, was not upon civil
process, and therefore appellant was in no better posi-
tion to successfully resist arrest than any other citi-
zen. But he, like any other citizen, had a right to resist
an unlawful arrest (1 Bishop, Crim. Proc. [2d ed.]
§162), but not to the extent of taking the life of the ag-
gressor, as in case of a felonious assault, for, in the lat-
ter case life is in danger, while in the former liberty
only, which may be secured by a resort to the laws.

If appellant in his endeavor to arrest Marovich
6. was unlawfully attempting to commit a violent
injury upon him, or, having the present ability,
was about to violently injure him by the use of more
force than was reasonably necessary under all the cir-
cumstances—a question for the jury—he thereby be-
came an offender himself and a subject for arrest.
Plummer v. State (1893), 135 Ind. 308, 34 N. E. 968.
And his resistance to arrest was unwarranted and the
emphasizing of his intention by drawing a pistol was
unlawful.

Appellant insists that instruction No. 3 was erroneous
for the reason that the court failed to include therein
the proviso which is a part of the section de-
7. fining the offense charged. We cannot agree
with this contention. This instruction refers
only to the definition of the offense, the charge pleaded,
and the penalty the jury might assess in case of a con-
viction. The first count upon which appellant was con-
victed is based upon §2344 Burns 1914, Acts 1905 p.
584, 687. The exception noted in the proviso of that
section is a matter of defense in a proper case, and be-

ing subsequent to the definition of the crime charged, it was not necessary as a question of pleading to nega- tive it. *Hewitt* v. *State* (1889), 121 Ind. 245, 23 N. E. 83; *State* v. *Maddox* (1881), 74 Ind. 105; Gillett, Crim. Law (2d ed.) §132a. This instruction was complete as to the subject covered, and no error intervened by the failure of the court, on its own motion, to include the proviso.

Instructions Nos. 4 and 5 told the jury when and under what circumstances certain persons were priv- ileged from arrest but did not include justices of 8. the peace within that class except as against civil process while engaged in hearing or deter- mining any trial. These instructions are said to be erroneous for the reason that they do not make any exception to the right of one to resist an unlawful ar- rest, or the right of self-defense as against an unlawful arrest. These instructions are not subject to the criti- cisms offered. The points made against them should have been presented by tendered instructions. *Colee* v. *State* (1881), 75 Ind. 511; Gillett, Crim. Law (2d ed.) §915.

The objections to instructions Nos. 7 and 8 have been fully answered in this opinion under our consideration of the first two specifications.

By instruction No. 11 the court, after detailing the different forms of verdict to meet each phase of the case, told the jury: "If you find the defendant 9. guilty, you will of course in a case of this kind fix his punishment. Punishments, in criminal cases, are, we may say, first to punish the offender, and to prevent the commission of like offenses. It is also to protect the public and society and stand as an ex- ample to prevent others from doing the same thing; and it is also for the purpose of reforming a defendant. If you find the defendant guilty you will have those

things in mind, and if you fix a penalty the jury should consider the circumstances surrounding the case, the situation of the parties, the standing of the men in the community, and fix your verdict and penalty at such an amount as in your judgment will serve as an example to prevent the defendent and others from doing likewise, and also to prevent a recurrence of the same offense."

Objection is made to that clause of the instruction "standing of the men in the community". It is a well-settled principle in this State that instructions to a jury must be within the issues, and pertinent to the evidence. The only evidence in this case on which the jury might speculate as to the standing of appellant in the community comes from his admitted business. But the instruction in question told the jury that in assessing punishment it should consider the "standing of the man in the community". The clause "standing of the man in the community" is a broad and comprehensive statement, and as here used, properly interpreted, referred to appellant's place in the community in the estimation of others, his relative position in social, commercial or moral relations, his repute, grade or rank. According to the instruction the jury was to consider appellant in the light of his standing in the community as an element in aid to the fixing of a proper penalty. Without evidence to guide the jury in this particular, its action would be purely speculative, and an improper basis for determining a proper punishment. *Drake* v. *State* (1874), 51 Ala. 30; *Barker* v. *State* (1874), 48 Ind. 163, 168. However, in our opinion, even though there was evidence of this character, it could not be considered for the purpose of enhancing or diminishing punishment.

In this consideration we are not unmindful of the rule

allowing jurors, in determining the credibility of the evidence offered, to use their common knowledge

**11.** gained from their own observation and experience in the affairs of life, but this rule cannot be extended to permit, if need be, the supplying of facts by the jury personally from their own number or from any source other than at the trial. In this case, had the jury named the minimum penalty, or approximately so, then there would be some reason for saying no harm was done appellant by the instruction; but when, as here, the penalty is one hundred times the minimum, it will not do to say that the error was not harmful.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 117 N. E. 562. Criminal law: (a) When a peace officer may arrest without warrant for a misdemeanor committed in his presence, 9 Ann. Cas. 623, 5 C. J. 436, 3 Cyc 897; (b) necessity of immediate arrest to prevent escape as a condition of right to make arrest without warrant, 2 L. R. A. (N. S.) 730; (c) persons liable to arrest on criminal charges, 5 C. J. 387, 464, 3 Cyc 874, 918; (d) when acts of officer in making arrest constitute an offense, 5 C. J. 424, 750, 3 Cyc 890; (e) instructions on matters not in evidence, 97 Am. St. 793.